**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JASON P. BROWN, | : | Civil No. 08-4489 (NLH) |
| Plaintiff, | : | |
| v. | : | OPINION |
| HENRY J. SADOWSKI, et al. | : | |
| Defendants. | : | |

**APPEARANCES:**

> JASON P. BROWN, #03541-015
> F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey  08320
> Plaintiff Pro Se

**Noel L. Hillman**, District Judge:

On September 9, 2008, the Clerk received a civil rights complaint ("Complaint") from Plaintiff JASON P. BROWN ("Plaintiff"), a prisoner currently confined at the Federal Correctional Facility Fairton, Fairton, New Jersey.  See Docket Entry No. 1.  The Complaint, executed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), arrived undated and unaccompanied by either Plaintiff's filing fee or by a complete application to proceed in forma pauperis.  See id.  Therefore, on September 25, 2008, this Court issued an order denying Plaintiff in forma pauperis status without prejudice and directing the Clerk to administratively terminate this matter subject to reopening in the event Plaintiff

prepays his filing fee or submits his prison account statement, hence completing his application to prosecute this matter in forma pauperis.  See Docket Entry No. 2.  On October 22, 2008, the Clerk received Plaintiff's prison account statement, together with his amended complaint ("Amended Complaint") dated October 20, 2008.  See Docket Entry No. 3, at 8; Docket Entry No. 3-2.  Consequently, on November 5, 2008, the Court directed the Clerk to reopen this matter for the purposes of the Court's examination of Plaintiff's application to proceed in this matter in forma pauperis.  See Docket Entry No. 4.

    Since the in forma pauperis application docketed in this matter indicated that Plaintiff's trust fund account statement was not certified, the Court issued an order, dated November 7, 2008, which: (a) denied Plaintiff in forma pauperis status; (b) directed Plaintiff to submit a certified copy of his trust fund account statement; and (c) ordered the Clerk to administratively terminate this matter, subject to reopening in the event Plaintiff provides a properly certified account statement.  See Docket Entry No. 5.  On November 14, 2008, the Clerk received a letter from Plaintiff: (a) indicating that the trust fund account statement Plaintiff submitted for mailing to this Court included due certification by Correctional Officer D. Kuhn; (b) providing the Court with a copy of the page containing Officer D. Kuhn's signature; and (c) notifying the Court of Officer D. Kuhn's

telephone number is in the event the Court desired further verification of certification process. See Docket Entry No. 6.

Based on the information provided in Plaintiff's letter, his affidavit of indigence and the absence of three qualifying dismissals within the meaning of 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a) (1998), and order the Clerk of the Court to file the Complaint and Amended Complaint.

Having reviewed the Amended Complaint at this time, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, in order to determine whether Plaintiff's pleading should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, this Court finds that the Amended Complaint should be dismissed, but such dismissal should be without prejudice.

I. **BACKGROUND**

    A. **Plaintiff's Original Complaint**

Plaintiff's original submission received by the Clerk on September 9, 2008, consisted of 39 pages and included: (1) a six-page Complaint naming two persons as Defendants in this action, namely, Henry J. Sadowsky, the head of the Northeast Regional Office of the Bureau of Prisons ("BOP"), and J. Pecoraio, the Chairperson of the Disciplinary Committee at the F.C.I. Fairton,

see Docket Entry No. 1, at 1-6; (2) Plaintiff's request for an order preventing Plaintiff's transfer from the F.C.I. Fairton and for a protective order ensuring Plaintiff against retaliation in the event Plaintiff is eventually retaliated against, see id. at 7; (3) copies of written communications between Plaintiff and BOP officials with respect to Plaintiff's administrative complaint filed pursuant to the Federal Tort Claims Act, see id. at 8-16, 27-38; and (4) exhibits replicating certain disciplinary reports, as well as copies of advertisements of religious services and an excerpt from the BOP inmate handbook.  See id. at 23-24, 39.

   The gist of Plaintiff's Complaint appeared to be as follows: On December 3, 2007, the BOP officials at the F.C.I. Fairton conducted a sanitation inspection of the facility.  See id. at 9. The inspection of the cell where Plaintiff and another inmate, Tillman Collum ("Collum"), were housed revealed presence of trash on the window sill, "food service items" on the desk, certain items on top on the lockers and a trash can, which was not emptied.  See id. at 9-10.  As a result of these sanitary violations, an incident report was issued; the report served as a basis for disciplinary sanctions entered against both Plaintiff and Collum.  See id.  Collum was sanctioned to 90 days loss of telephone, visitation and commissary privileges, while Plaintiff was sanctioned to 15 days loss of the same (plus conditional 75 days loss of these privileges in the event Plaintiff failed to

4

maintain "clear conduct" for 180 days after the incident).[1]  See id. at 19, 21.

The sanctions imposed upon Plaintiff, i.e., the 15-day actual and 75-day conditional loss of telephone, visitation and commissary privileges, were challenged in the original Complaint; specifically, Plaintiff asserted that the imposition of these sanctions was a violation of his constitutional rights and sought damages in the amount of five million dollars.  See id. at 6.

**B.   Plaintiff's Amended Complaint**

The Amended Complaint, a document much shorter than the original Complaint, indicated Plaintiff's decision to withdraw his charges against Henry J. Sadowsky (the head of the Northeast Regional Office of the Bureau of Prisons), since the Amended Complaint named, as Defendant in this action, only J. Pecoraio (the Chairperson of the Disciplinary Committee at Fairton).  See Docket Entry No. 3, at 1.  The "Notice of Tort Claim" attached to the Amended Complaint largely summarized the factual allegations set forth in the original Complaint.  See id. at 7.  In addition,

---

[1] Plaintiff asserted that Collum was responsible for all the sanitary violations in the cell, and Collum eventually executed an affidavit to that effect.  See Docket Entry No. 3, at 9.  The Court, however, notes, in passing, that no statement made in the incident report ever asserted that a particular inmate caused the sanitary violation; rather, the report stated that the cell jointly occupied by Plaintiff and Collum was in an insanitary condition, see Docket Entry No. 1, at 18-19, 21, and the statements made by Plaintiff in the Complaint and Amended Complaint unambiguously verify that fact.

5

same as the original Complaint, the Amended Complaint asserted that Plaintiff's loss of privileges was "a clear violation of [Plaintiff's] 'Constitutional Rights' and human dignity" and "a clear act of 'deliberate indifference.'"  Id. at 8 (internal quotation marks in original).  In response to the question in Clerk's civil rights complaint form "what ... did [the defendant] d[o] or not do that violated your constitutional rights?", the Plaintiff asserted an "unlawful hash [sic] and unusual punishment of Deliberate Indifferent [sic]."  Plaintiff also restated his demand for five million dollars in damages.  See id.

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to

6

less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted). Elaborating on the foregoing, the Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

However, a court should not dismiss a complaint with prejudice for failure to state a claim without providing leave to amend, unless it finds bad faith, undue delay, prejudice to

defendants or futility.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

**III.   DISCUSSION**

    **A.   Nature of a Bivens Action**

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

The Bivens claim asserted here is the functional equivalent of a § 1983 action[2] except it is one brought against federal

---

[2] Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured
>                                          (continued...)

actors.³  To recover in a <u>Bivens</u> action under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of *a right secured by the Constitution or laws of the United States*, and (2) the deprivation was done under color of federal law.  <u>See</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001) ("A <u>Bivens</u> action . . . is the federal equivalent of the § 1983 cause of action . . . , [it] will lie where the defendant has violated the plaintiff's rights under color of federal law"); <u>cf.</u>, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)(discussing a Section 1983 action).

**B.  Eighth Amendment Rights**

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981), and prison officials must merely ensure

---

²(...continued)
   by the Constitution and laws, shall be liable
   to the party injured in an action at law,
   suit in equity, or other proper proceeding
   for redress.

42 U.S.C. § 1983.

³ <u>See</u> <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel," there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>See</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001).

that inmates receive adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The objective component mandates that "only those deprivations denying 'the *minimal* civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (emphasis supplied), hence requiring that the deprivations sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that

prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

In contrast, losses of privileges do not amount to infliction of cruel and unusual punishment; and a loss of visitation, commissary or telephone privileges is no exception to this rule. See Overton v. Bazzetta, 539 U.S. 126 (2003) (withdrawal of visitation privileges for at least two years was not a dramatic departure from accepted standards for conditions of confinement, nor did such withdrawal create inhumane prison conditions, or deprive the inmate of basic necessities); accord Cook v. Warden, FCI Fort Dix, 2005 U.S. Dist. LEXIS 33803 (D.N.J. Dec. 16, 2005) (same); Leon v. Schaaff, 2005 U.S. Dist. LEXIS 22462 (D.N.J. Sept. 23, 2005) (loss of commissary and telephone privileges and placement in disciplinary confinement do not impose atypical and significant hardship upon an inmate); see also Georges v. Ricci, 2007 U.S. Dist. LEXIS 89030, at *20-22 (D.N.J. Dec. 3, 2007) (ninety-two days of segregated housing, accompanied by denial of visitation and telephone contacts did not violate the inmate's rights, especially if the inmate was able to write to and receive letters from his family). In fact, it was expressly established that denial of telephone or visitation contacts "simply does not amount to the infliction of

11

pain." Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir. 1986) (citing Rhodes, 452 U.S. 337, and Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982), the case holding that imposition of idleness cannot be a violation of the Eighth Amendment simply because it cannot amount to an infliction of pain)).[4]

Since visitation and telephone privileges, same as the privilege of making purchases at the facility's commissary, do not qualify as minimal life's necessities, Plaintiff's allegations based on his temporary loss of such privileges fail to state a claim upon which relief may be granted and, therefore, these allegations will be dismissed with prejudice. Accord Hubbard v. Taylor, 538 F.3d 229, 235 (3d Cir. 2008) (conditions of confinement should be assessed under the "totality of the circumstances within [the] institution" test).

The dismissal of Plaintiff's Amended Complaint, however, will be without prejudice, since the statements made in

---

[4] Moreover, even if the Court were to construe Plaintiff's claim based on loss of visitation or telephone contacts as a First Amendment claim, such claim would be without merit. It has been held that "incarcerated persons maintain no right to simple physical association . . . grounded in the First Amendment." Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985), cert. denied, 475 U.S. 1016 (1986). The Supreme Court has stated that, "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution." Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 126 (1977). While the denial of visitation may be harsh, "it is part of the penalty that criminals pay for their offenses against society." Toussaint, 801 F.2d at 1114 (citing Rhodes, 452 U.S. 337).

Plaintiff's original Complaint and Amended Complaint do not allow this Court to rule out the possibility that Plaintiff may have and want to assert some constitutional claim related to conditions of his confinement other than the loss-of-privileges claim he asserts here.  Accordingly, the Court will allow Plaintiff one more opportunity to amend his pleading.  See Grayson, 293 F. 3d at 110-111; Shane, 213 F. 3d at 117.

**IV.   CONCLUSION**

Based on the foregoing, the Court will grant Plaintiff's application to proceed in forma pauperis and dismiss Plaintiff's Amended Complaint.  Such dismissal will be with prejudice for the purposes of the claims addressed in the instant Opinion, however, it will be without prejudice for the purposes of Plaintiff's filing a second amended complaint.

An appropriate Order accompanies this Opinion.


                          s/Noel L. Hillman
                          **NOEL L. HILLMAN**
                          **United States District Judge**

Dated: February 9, 2009
At Camden, New Jersey