```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JASON P. BROWN, | Civil No. 08-4489 (NLH) |
| Plaintiff, |  |
| v. | **MEMORANDUM OPINION & ORDER** |
| HENRY J. SADOWSKI, et al., |  |
| Defendants. |  |

This matter comes before the Court upon receipt of Plaintiff's motion for reconsideration ("Motion"), Docket Entry No. 16, and it appearing that:

1. On September 9, 2008, the Clerk received Plaintiff's original complaint, together with his insufficient in forma pauperis application. See Docket Entry No. 1.

2. On September 25, 2008, the Court denied Plaintiff in forma pauperis status and directed administrative termination of this matter, subject to reopening in the event Plaintiff timely cured the insufficiencies in his in forma pauperis application. See Docket Entry No. 2.

3. On October 22, 2008, Plaintiff submitted his amended complaint, together with another insufficient in forma pauperis application. See Docket Entry No. 3.

4. The Court consequently directed reopening of this matter and, on November 7, 2008, again denied Plaintiff in forma pauperis status, without prejudice, and administratively re-terminated this action. See Docket Entries Nos. 3 and 4.

5. On November 14, 2008, the Clerk received another in forma pauperis application from Plaintiff, together with Plaintiff's first amended complaint. See Docket Entries Nos. 5 and 6. Since Plaintiff's in forma pauperis submission was in compliance with the statutory requirements, the Court directed reopening of this matter and granted Plaintiff in forma pauperis status. See Docket Entries No. 7 and 9.

6. Upon screening of Plaintiff's amended complaint, the Court determined that Plaintiff's allegations stated no cognizable constitutional claim. See Docket Entry No. 8, at 8-12 (determining that Plaintiff had no Eighth Amendment or due process rights in phone or commissary privileges allegedly withheld from Plaintiff on temporary basis as a result of disciplinary proceedings). The Court, therefore, issued an order and accompanying opinion dismissing Plaintiff's claims based on loss of the aforesaid privileges; such dismissal was made with prejudice. See Docket Entry No 9. The Court, however, granted Plaintiff one final opportunity to amend his pleadings in the event Plaintiff wished to state

conditions-of-confinement claims other than those dismissed. See id.; see also Docket Entry No. 8, at 13. Specifically, the Court stated as follows:

> Plaintiff's original Complaint and Amended Complaint do not allow this Court to rule out the possibility that Plaintiff may have and want to assert some constitutional claim related to conditions of his confinement other than the loss-of-privileges claim he asserts here. Accordingly, the Court will allow Plaintiff one more opportunity to amend his pleading.

Docket Entry No. 8, at 13.

7. On March 13, 2009, the Clerk received a letter from Plaintiff. See Docket Entry No. 10. Since the letter indicated that Plaintiff attempted, but did not succeed, in submitting a second amended complaint, the Court concluded that it would be in the interests of justice to allow Plaintiff an extension of time to submit his second amended complaint and, accordingly, issued an order to that effect, which was served upon Plaintiff by certified mail, return receipt requested. See Docket Entries Nos. 11-13.

8. Since Plaintiff timely resubmitted his second amended complaint, see Docket Entry No. 14, the Court reopened this matter once again. However, the allegations stated in Plaintiff's second amended complaints mimicked the claims stated in his first amended complaint,[1] compare Docket

---

[1] The allegations stated in Plaintiff's first and second amended complaints could be summarized as follows: On December

    Entries No. 3 and No. 14, that is, in his second amended complaint, Plaintiff restated the very same claims this Court dismissed with prejudice, <u>i.e.</u>, Plaintiff reasserted that he was subjected to disciplinary sanctions (in the form of loss of phone and commissary privileges) in violation of Plaintiff's due process and Eighth Amendment rights, and requested compensatory damages in the amount of five million dollars. <u>See</u> <u>id.</u> The second amended complaint contained no other allegations; specifically, Plaintiff's second amended complaint contained no conditions of confinement challenges. <u>See</u> <u>id.</u>

9. Since Plaintiff's second amended complaint stated no allegations except those already dismissed (namely, Plaintiff claims asserting loss of phone or commissary

---

3, 2007, the BOP officials at the F.C.I. Fairton conducted a sanitation inspection of the facility.  The inspection of the cell where Plaintiff and another inmate, Tillman Cullum ("Cullum"), were housed revealed the presence of trash on the window sill, certain food service items on the desk, certain unspecified items on top on the lockers, plus a un-emptied trash can.  As a result of these sanitary violations, an incident report was issued; the report served as a basis for disciplinary sanctions entered against both Plaintiff and Cullum (specifically, Cullum lost his phone, commissary and visitation privileges for 90 days, while Plaintiff lost his phone and commissary privileges for 15 days).  Cullum executed an affidavit stating that the trash on the window sill, food service items, the items creating clutter on the desk and top of lockers belonged to Cullum, and the trash can contained Cullum's items. Asserting that, being merely Cullum's cell-mate, he was not responsible for Cullum's untidiness, Plaintiff maintained that the sanctions against him violated his Eighth Amendment and due process rights.  <u>See</u> Docket Entries Nos. 3 and 14.

4

privileges), the Court dismissed Plaintiff's second complaint. See Docket Entry No. 15. That dismissal was made with prejudice because Plaintiff's recital of the same meritless claims indicated that another amendment of Plaintiff's pleadings would be futile. See id. The Court's memorandum opinion and accompanying order to that effect was issued on June 24, 2009.

10. On July 6, 2009, the Clerk received Plaintiff's instant Motion.[2] See Docket Entry No. 16. The Motion reads as follows:

> Plaintiff[] is requesting this "Motion" to be considered base on the Plaintiff's "condition of confinement" at the time of the incident pursuant to the sanitation condition that Plaintiff[] was subjected to. . . . "Cullum" indicated to the defendant "knowledge" of the "unsanitary condition" for a period of time [i.e., Cullum conceded to the prison officials that the trash in the cell belonged to Cullum rather than Plaintiff]. "Cullum" stated the unsanitary violation in "Cullum" Affidavit to that effect. Addition pursuant to the Unit Regulation & Guideline policy[] state that the unit room/cell and common area will be inspected daily. Plaintiff[] argue[s] that these daily inspection wasn't implemented for a period of time leading up to the incident [i.e., the inspection of Cullum and Plaintiff's cell, which resulted in Cullum and Plaintiff's loss of privileges for a certain period of time]. And because Plaintiff[] was subjected to the unsanitary condition where Plaintiff is confine[d] . . . the defendant and other prison officials violated Plaintiff's 8

---

[2] Plaintiff's Motion is based on the facts raised in Plaintiff's first and second amended complaints. Those facts are set forth supra note 1.

5

> Amendment [r]ights by subjecting Plaintiff to the unsanitary condition where Plaintiff is confine[d].

Id. at 1-2.  The Motion further alleged that, on the grounds of the alleged violations, i.e., for: (a) being housed in the cell containing Cullum's trash; plus (b) not having his and Cullum's cell inspected daily by prison officials, Plaintiff seeks, once again, compensatory damages in the amount of five million dollars.  See id. at 3.

11. It appears that Plaintiff's "Motion" could be construed as either motion for reconsideration or as Plaintiff's de facto third amended complaint, which was submitted regardless of the fact that the Court dismissed Plaintiff's second amended complaint with prejudice.  The Court, out of abundance of caution, examines the Motion under both constructions.

12. There are four basic grounds upon which a motion for reconsideration may be granted:  (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to accord the decision to an intervening change in prevailing law.  See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)(purpose of

6

     motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998). However, mere disagreement with the district court's decision is inappropriate on a motion for reconsideration, and should be raised through the appellate process. Id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "The Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442.

13. Here, it is self-evident that the Court did not overlook any facts alleged in Plaintiff's original, first amended and second amended complaints since the motion is based on the same set of operative facts. Moreover, Plaintiff does not allege that the Court committed any manifest errors of law, or that an intervening change in prevailing law took place, or that Plaintiff obtained evidence unavailable to him at

the time of his execution of his original, first amended and second amended complaints. The Motion – if construed as a motion for reconsideration -- must be denied.

14. However, as noted supra, it appears that Plaintiff's Motion is a de facto third amended complaint produced because Plaintiff's previously stated claims were dismissed as meritless. Although the filing of such a complaint is procedurally defective, in light of Plaintiff's pro se litigant status, the Court will examine Plaintiff's now-stated conditions-of-confinement claims on merit.

15. Here, Plaintiff asserts that his rights were violated because: (a) Plaintiff was housed in the cell which was deemed in condition not meeting the prison's sanitation requirements as a result of containing Cullum's trash on the window sill, his food service items on the cell desk and on top of lockers, and a trash can with Cullum's items; and (b) the prison officials did not inspect Plaintiff and Cullum's cell on daily basis. Neither one of these allegations states a cognizable claim.

16. The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and prison officials must

8

merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," <u>Helling</u>, 509 U.S. at 32 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)), hence requiring that the deprivation sustained by a prisoner be an "extreme deprivation." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm ensuing from that extreme deprivation.  <u>See</u> <u>Farmer</u>, 511 U.S. at 835; <u>Wilson</u>, 501 U.S. at 303.

17. With that standard in mind, this Court now turns to Plaintiff's instant claims.  Plaintiff's first claim asserts that his rights were violated because the cell contained Cullum's trash.  This fact, however, fails to meet even the

9

first, i.e., the objective, component of the test: the presence of Cullum's trash in the cell neither deprived Plaintiff of the minimal civilized measure of life's necessities nor posed any risk of harm to Plaintiff, since the trash consisted of basic food and household items placed on the window sill, lockers, desk and in the trash can. See e.g., Wheeler v. Walker, 303 Fed. App'x 365 (7th Cir. 2008) (the district court properly found that the prisoner's Eighth Amendment rights were not violated where the prisoner alleged that, for two weeks, he had only a thin blanket to protect him from the frigid air that entered his unheated cell through a window with broken latches, roaches crawled over him while he tried to sleep on a badly torn mattress, urine and waste "encrusted" the sink and toilet, trash, dirt, and debris covered the floors, walls, and sink, and the stench of his and his cellmate's waste wafted from a malfunctioning toilet).  The fact that the untidy condition of Plaintiff and Cullum's cell warranted disciplinary sanctions under the prison's sanitation regulations does not mean that very same condition produced a deprivation of constitutional magnitude within the meaning of the Eighth Amendment.  Therefore, Plaintiff's conditions-of-confinement allegations fail to state a cognizable claim and should be dismissed.

18. Plaintiff's claims based on lack of daily inspections fare no better: Plaintiff has no Eighth Amendment right (or rights under any other constitutional provision) to have his cell daily inspected.[3] See Jenkins v. Anderson, 2008 U.S. Dist. LEXIS 62251 (E.D. Pa. Aug. 13, 2008) (the inmate's claim that his prison officials violated his rights by failing to conduct an inspection of his cell did not state a conditions-of-confinement claim).

19. Consequently, even if construed as Plaintiff's third amended complaint, Plaintiff's Motion must be dismissed for failure to state a claim upon which relief can be granted.

IT IS, therefore, on this __20TH__ day of __July__, 2009,

ORDERED that the Clerk shall reopen this matter for the purpose of this Court's addressing Plaintiff's motion for reconsideration, by making a new and separate entry reading "CIVIL CASE REOPENED": and it is further

ORDERED that Plaintiff's motion for reconsideration, Docket Entry No. 16, is denied (or, if construed as Plaintiff's third amended complaint, dismissed with prejudice); and it is further

---

[3] Moreover, Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials. Cf. Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006).

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail; and it is finally

ORDERED that the Clerk shall close this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

                                           /s/ NOEL L. HILLMAN
                                           **NOEL L. HILLMAN**
                                           **United States District Judge**

At Camden, New Jersey